UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,       Case No. 14-cr-20676
vs.       HON. MARK A. GOLDSMITH

JERRY WAYMEN-TIMOTHY BIGHAM

    Defendant.
_____/

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (Dkt. 20)

### I.  INTRODUCTION

Defendant Jerry Bigham filed a motion to suppress (Dkt. 20), seeking to exclude all evidence obtained as the result of a search warrant executed at the residential address 1073 Levona Street in Ypsilanti, Michigan.  Defendant argues that the affidavit in support of the search warrant failed to establish probable cause, and that law enforcement could not have reasonably relied on the affidavit in good faith.  The government filed a response to Defendant's motion (Dkt. 23); Defendant did not file a reply.  A hearing on Defendant's motion was held on June 23, 2015.  For the reasons set forth below, the Court denies Defendant's motion to suppress the evidence.

### II.  FACTUAL BACKGROUND

On August 9, 2014, law enforcement searched the premises at 1073 Levona Street in Ypsilanti, Michigan, and recovered, among other items, currency, firearms, and marijuana.  See Search Warrant & Aff., Ex. A to Gov't Resp., at 7 (Dkt. 23-1).  The seizure led to charges of (i) possession with intent to distribute a controlled substance, pursuant to 21 U.S.C. § 841(a)(1); (ii) felon in possession of a firearm, pursuant to 18 U.S.C. §§ 922(g)(1), 924(e); and

1

(iii) possession of a firearm in furtherance of a drug trafficking crime, pursuant to 18 U.S.C. § 924(c). See Indictment at 2-3 (Dkt. 7).[1] The search was authorized by a state court warrant, issued upon an affidavit sworn by Ypsilanti Police Officer Michael Thomson. The affidavit details Officer Thomson's background and his prior experience in controlled substance investigations. Search Warrant & Aff. at 1-2, ¶¶ A-C.

The search was the result of an investigation into Defendant that had begun approximately one week earlier. On August 2, 2014, Ypsilanti Police Officer Peterson conducted a traffic stop of a black male driving a black Lexus. Id. at 2, ¶ E.[2] At some point, the driver of the black Lexus was identified as Defendant, although it is unclear how or when this identification was made. Id. After Defendant informed Officer Peterson that he did not have his license on him, Officer Peterson asked Defendant to step out of the vehicle; in response, Defendant drove off at a high rate of speed. Id. Officer Peterson pursued Defendant, but ultimately lost sight of the vehicle and terminated the pursuit because of the residential nature of the area and the presence of pedestrian and vehicular traffic. Id.

Later, dispatch advised Officer Peterson of a 911 call regarding a bag having been thrown out of a window of the black Lexus Officer Peterson had been pursuing. Id. at 2, ¶ F. Officer Peterson went to the location described by the caller and retrieved "an orange lunch bag which contained marijuana, sandwich baggies and a digital scale." Id. According to Officer Peterson, the materials were packaged in a manner consistent with drug trafficking. Id. Officer Peterson contacted the 911 caller, who requested anonymity. Id. at 2, ¶ G. The caller reported that a

---

[1] Defendant was also charged with an additional count of possession with intent to distribute a controlled substance, see Indictment at 1, but Defendant does not challenge the evidence supporting that charge.

[2] Defendant does not challenge the legality of the stop.

2

black male driver of a black Lexus "had thrown the orange bag and digital scale out of the vehicle he was in before the patrol car turned onto" the street. Id.

Officer Peterson contacted Officer Thomson with this information, who then conducted a background check of Defendant. Id. at 2-3, ¶¶ G-J. That effort revealed that Defendant had a criminal history of possessing and manufacturing controlled substances. Id. at 3, ¶ J.[3] Similarly, during a prior arrest for an unrelated crime, Defendant was found in possession of "two large ziplock baggies of suspected marijuana, [a] digital scale and several empty clear plastic sandwich baggies." Id. at 3, ¶ H. From a TLO check, Officer Thomson learned that utility bills for the residence at 1073 Levona Street, Ypsilanti, Michigan were in Defendant's name, and that Defendant associated with Chaya Letrice Bonner, a woman who resided at the same address. Id. at 3, ¶ I.[4] The same day (August 2), Officer Thomson visited the identified residence and spoke with Ms. Bonner. Id. at 3, ¶¶ K, L. Ms. Bonner refused to say whether Defendant lived at the address, but she did inform Officer Thomson that Defendant was the father of her child and that Defendant had utility bills in his name at the location. Id. at 3, ¶ K.[5]

On August 8, 2014, officers conducted a "trash pull" at 1073 Levona, the contents of which included a plastic grocery bag and a clear zip lock baggie, both containing marijuana

---

[3] Specifically, Defendant had been arrested for and pleaded guilty to charges of (i) delivering and manufacturing cocaine in 1993, (ii) possession of marijuana in 2003 and 2008, and (iii) manufacturing and delivering marijuana in 2009. Search Warrant & Aff. at 3, ¶ J. At the time the affidavit was sworn, Defendant was on probation for possession of a controlled substance. Id.

[4] While not explained in the affidavit, a "TLO check" appears to be the use of a program called "TLOxp," a "streamlined, custom, scalable investigative and risk management tool for due diligence, threat assessment, identity authentication, fraud prevention and detection, legislative compliance, and debt recovery." It is composed of "public and proprietary records" that allow organizations, such as law enforcement agencies, to "locat[e] and research[ ] connections between individuals, businesses and assets." See TLOxp, www.tlo.com (last visited July 8, 2015).

[5] This statement regarding utility bills, as detailed infra, is disputed by Defendant.

residue.  Id. at 4, ¶¶ M-O.  The trash also contained mail addressed to Ms. Bonner at 1073 Levona.  Id. at 4, ¶ N.  At the time of the trash pull, the officers also observed a black Lexus in the driveway of 1073 Levona, which appeared to be the same Lexus Defendant was driving at the time of the traffic stop.  Id. at 4, ¶ M.  Based on this information, a search warrant was obtained and a search was executed the following day.

### III.  ANALYSIS

#### A.  Legal Standard

For a search warrant to be valid, it must be supported by probable cause.  U.S. Const. amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.").  To determine whether an affidavit establishes probable cause, an issuing magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983).  Accordingly, the affidavit must demonstrate "a nexus between the place to be searched and the evidence sought." United States v. Laughton, 409 F.3d 744, 747-748 (6th Cir. 2005) (quoting United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004)) (internal quotation marks omitted).

In reviewing the magistrate's probable-cause determination, this Court's task is to ensure that the magistrate had a "substantial basis" for his conclusion.  Gates, 462 U.S. at 238-239.  To encourage the use of and reliance on judicially-approved warrants in the course of law enforcement investigations, "reviewing courts are to accord the magistrate's determination 'great deference,'" and a probable-cause determination "should only be reversed if it was arbitrarily

4

exercised." United States v. Allen, 211 F.3d 970, 973 (6th Cir. 2000) (en banc) (quoting Gates, 462 U.S. at 236). The Court's review for sufficiency of evidence is limited to the information contained within the four corners of the affidavit. United States v. Coffee, 434 F.3d 887, 892 (6th Cir. 2006).

**B. Discussion**

The affidavit at issue here does not present a close call. The magistrate was well within his discretion to conclude that there was a "fair probability" that a search of the premises at 1073 Levona would yield evidence of criminal activity or contraband. This is evident from the results of the trash pull, which not only revealed evidence of drug possession and/or trafficking, but also conclusively established that the trash originated from the residence of 1073 Levona. Notably, Defendant contests neither the legality nor the results of the trash pull, but instead intimates only that the trash pull was insufficient to establish the required nexus between the location to be searched and the suspected criminal activity. Def. Mot. at 8 (Dkt. 20) ("The only information . . . establishing any relationship between 1073 Levona and the criminal activity at issue is the trash pull conducted at that location.").

However, the government correctly observes that the results of a trash pull, by itself, may suffice to establish probable cause to search the premises. See United States v. Lawrence, 308 F.3d 623, 627 (6th Cir. 2002) (trash pull revealed wrappers with cocaine residue, which "supplied sufficient probable cause for the search warrant."); United States v. Patton, 411 F. App'x 806, 809 (6th Cir. 2011) ("[W]hite substance which field-tested positive for cocaine, remnants of hand-rolled marijuana cigarettes, marijuana seeds and stems, and a plastic bag containing marijuana residue" found in trash sufficed for probable cause). Thus, the magistrate was justified in finding probable cause on that basis alone.

Because the results of the trash pull were sufficient to establish probable cause, Defendant's remaining arguments are immaterial. For instance, Defendant's argument that the affidavit failed to adequately connect him to the residence at 1073 Levona is beside the point. Def. Mot. at 7-8. The relevant inquiry is whether there is a sufficient "nexus between the place to be searched and the evidence sought." Carpenter, 360 F.3d at 594 (quoting United States v. Van Shutters, 163 F.3d 331, 336-337 (6th Cir. 1998)) (internal quotation marks omitted). The warrant sought evidence of controlled substances, which specifically included marijuana, and materials associated with the trafficking of such substances, see Search Warrant & Aff. at 1, ¶ 2, which was adequately connected to 1073 Levona by the discovery of marijuana residue in trash from that location. Where, as here, the affidavit establishes a sufficient connection between the location and the suspected criminal activity, additional facts tying the defendant to the same location are not constitutionally required.

Nonetheless, Officer Thomson's affidavit does establish a connection between Defendant and 1073 Levona. The affidavit referenced the TLO search, which revealed that Defendant has an electric bill and phone bill for the Levona property in his name. The affidavit further explains that the mother of Defendant's child resides at the address and that a car that appeared to be the same one Defendant was driving at the time of Officer Peterson's stop was also observed at the address. These facts make it reasonable to conclude that Defendant also resided, or at least maintained a presence, at the address. Therefore, the affidavit does establish a nexus between Defendant and the location that was searched.

Similarly, the Court finds Defendant's conclusory argument that the anonymous 911 tip was uncorroborated, and, therefore, could not contribute to the probable-cause determination to be unpersuasive. Def. Mot. at 7. According to the anonymous informant, a bag was thrown out

6

of a black Lexus, driven by a black male, while the driver was being pursued by law enforcement. The tip itself was corroborated by Officer Peterson's actual recovery of the bag and its contents at the location described by the caller. The caller's description of events was also corroborated by Officer Peterson, as she had been pursuing a black male driving a black Lexus who had fled in the middle of a traffic stop. Accordingly, the information was sufficiently independently corroborated so as to "'reduce[ ] the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.'" Gates, 462 U.S. at 244-245 (quoting Jones v. United States, 362 U.S. 257, 269, 271 (1960), overruled on other grounds by United States v. Salvucci, 448 U.S. 83 (1980)). Consequently, the magistrate was permitted to consider the information provided by the anonymous tipster when evaluating the affidavit.

Defendant's attempts to attack the sufficiency of the affidavit piecemeal fail to appreciate that affidavits are reviewed in a common-sense manner to determine "whether the totality of the circumstances supports a finding of probable cause," and not in a hyper-technical fashion that engages in a line-by-line scrutiny. United States v. Woosley, 361 F.3d 924, 926 (6th Cir. 2004). The totality of circumstances presented by Officer Thomson's affidavit reasonably warrants the conclusion that Defendant was engaged in drug trafficking activity, and that a search of 1073 Levona would yield either contraband or evidence of such trafficking activity. The affidavit was amply supported by probable cause.[6]

---

[6] Because the Court concludes that the affidavit was supported by probable cause, the Court also rejects Defendant's cursory argument that "the warrant was unsupported by probable cause [and] any reasonably well-trained officer would have known that the search was illegal." Def. Mot. at 9. The Court construes this statement as arguing that the "affidavit [is] 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" such that the good-faith exception to the exclusionary rule does not apply. See United States v. Leon, 468 U.S. 897, 923 (1984) (quoting Brown v. Illinois, 422 U.S. 590, 610-611 (1975) (Powell, J. concurring in part)). Officer Thomson's affidavit is not the "bare bones" affidavit that fails to identify "some connection, regardless of how remote it may have been, between the criminal activity at issue and the place to be searched." Laughton, 409 F.3d at 750 (emphasis in original).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to suppress the evidence and request for an evidentiary hearing (Dkt. 20) are denied.[7]

Dated:  July 9, 2015            s/Mark A. Goldsmith
        Detroit, Michigan       MARK A. GOLDSMITH
                                United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 9, 2015.

                                s/Johnetta M. Curry-Williams
                                Case Manager

---

Accordingly, even if the affidavit did fail to establish probable cause, the executing officers were not unreasonable in relying on it, and the good-faith exception would apply.

[7] Defendant is not entitled to an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154, 155-156 (1978) (where a "defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, . . . a hearing [must] be held at the defendant's request.") (emphasis added).  If the challenged portion of the affidavit is not necessary to the probable-cause finding, an evidentiary hearing is not required. Id. at 171-172 ("[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.").  Here, the challenged portion of the affidavit — Ms. Bonner's statement to Officer Thomson that Defendant's name was on the Levona property utility bills — was not necessary to establish probable cause because the same information was secured from the TLO search.