UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                    Case No. 14-cr-20676

v.

                                    HON. MARK A. GOLDSMITH

JERRY WAYMEN-TIMOTHY BIGHAM,

        Defendant.

_____/

**OPINION AND ORDER**
**(1) DENYING DEFENDANT'S MOTIONS FOR RECONSIDERATION (Dkt. 42), TO**
**TRANSFER (Dkt. 43), AND TO SUPPRESS IDENTIFICATION EVIDENCE (Dkt. 44);**
**AND (2) DENYING DEFENDANT'S MOTION IN LIMINE TO PROHIBIT THE USE OF**
**"FELON" AND TO SUPPRESS PRIOR CRIMINAL RECORD (Dkt. 48)**

Defendant Jerry Waymen-Timothy Bigham has recently filed four motions: (i) to

reconsider the denial of Defendant's previous suppression motion (Dkt. 42); (ii) to transfer

Defendant to Milan Detention Facility (Dkt. 43); (iii) to suppress out-of-court and in-court

identifications (Dkt. 44); and (iv) to prohibit the use of "felon" in the felon-in-possession charge,

as well as to suppress Defendant's prior record in the event Defendant elects to testify (Dkt. 48).

The Government filed a response to these motions (Dkt. 50); Defendant did not file a reply.  For

the reasons discussed fully below, the Court denies all four motions.

## I.  ANALYSIS[1]

### A.  Motion for Reconsideration

Defendant previously filed a motion to suppress (Dkt. 20), seeking to exclude all

evidence obtained as the result of a search warrant executed at the residential address 1073

Levona Street in Ypsilanti, Michigan.  The Court denied the motion, finding that, under the

---

[1] The Court addressed the factual background of this case in an opinion and order denying
Defendant's motion to suppress evidence.  See 7/9/2015 Op. & Order at 1-4 (Dkt. 24).
Therefore, the Court will not repeat the background set forth in its earlier decision.

totality of the circumstances, Officer Thomson's affidavit was amply supported by probable cause.  See 7/9/2015 Op. & Order at 7 (Dkt. 24).  Defendant has now filed a motion for reconsideration (Dkt. 42).

Pursuant to Local Rule 7.1(h), the Court "will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication."  E.D. Mich. LR 7.1(h)(3).  Rather, a party seeking reconsideration must demonstrate (i) a "palpable defect" by which the court and the parties have been "misled," and (ii) that "correcting the defect will result in a different disposition of the case."  Id.  A "palpable defect" is an error that is "obvious, clear, unmistakable, manifest or plain."  United States v. Cican, 156 F. Supp. 2d 661, 668 (E.D. Mich. 2001).

According to Defendant, "[t]he affidavit in support of the search warrant contained numerous errors and false statements."  Def. Mot. for Reconsideration at 2.  As in his initial motion, Defendant challenges the affidavit in a line-by-line, piecemeal fashion.  For instance, Defendant contends that (i) the narcotics complaint Officer Thomson was investigating did not exist and was not produced when Defendant was arrested, id. at 2-3; (ii) there were errors concerning his prior controlled substance convictions, id. at 4; and (iii) Officer Thomson did not run "the license plate or VIN number" of a black Lexus that appeared similar to the vehicle stopped by Officer Peterson, id.

However, the Court has previously noted that this "hyper-technical" approach of engaging in a "line-by-line" scrutiny fails to "appreciate that affidavits are reviewed in a common-sense manner to determine whether the totality of the circumstances supports a finding of probable cause."  7/9/2015 Op. & Order at 7.  Moreover, Defendant does not explain how any of the alleged defects actually amounts to a "palpable" defect, such that the Court and the parties

2

were misled, nor does he offer any argument that correcting these purported defects would result in a different disposition of the case.[2]

Furthermore, Defendant's motion for reconsideration fails to overcome the Court's holding that the magistrate was justified in finding probable cause based solely on the results of the trash pull, which contained marijuana residue.  See 7/9/2015 Op. & Order at 5 (citing United States v. Lawrence, 308 F.3d 623, 627 (6th Cir. 2002); United States v. Patton, 411 F. App'x 806, 809 (6th Cir. 2011)).  On this point, Defendant argues that the officers knew or should have known that, at the time of the trash pull, Defendant legally possessed a Michigan medical marijuana card, which would "not establish probable cause to believe that a crime was being committed."  Def. Mot. for Reconsideration at 4.  In support of his argument, Defendant cites a footnote from a 2012 Michigan Court of Appeals case.  Id. at 5 (citing People v. Brown, 825 N.W.2d 91, 95 n.5 (Mich. Ct. App. 2012)).  This argument fails for three reasons.

First, Defendant does not explain why this new legal theory was not raised in his first motion to suppress evidence.  See Khoshiko v. Deutsche Bank Trust Co. Ams., No. 12-CV-14717, 2013 WL 5657704, at *1 (E.D. Mich. Oct. 17, 2013) ("Motions for reconsideration do not allow the losing party to raise new legal theories that should have been raised earlier.").  Second, the court in Brown held that, "if the police . . . have clear and uncontroverted evidence that a person is in full compliance with the [Michigan Medical Marijuana Act], this evidence must be included as part of the affidavit because such a situation would not justify the issuance of a warrant."  825 N.W.2d at 95 n.5.  However, the Sixth Circuit considered Brown's footnote "dictum," United States v. Duval, 742 F.3d 246, 252 (6th Cir. 2014), and Defendant fails to offer any cogent argument why this Court should depart from the Sixth Circuit's approach.  Third, there was no "clear and uncontroverted evidence" that the police knew that Defendant was "in

---

[2] In fact, several issues Defendant raises in his motion for reconsideration, like contesting whether utility bills for the searched address were in Defendant's name, see Def. Mot. for Reconsideration at 3, were already addressed by the Court.  See 7/9/2015 Op. & Order at 3, 6.

full compliance" with Michigan's medical marijuana law when they applied for a warrant. In fact, what one officer knew, based on an earlier stop of Defendant, was that Defendant had had in his possession — several months earlier — a medical marijuana card that was <u>expired</u>.

Therefore, Defendant has failed to carry his burden for reconsideration and his motion is denied.

### B.  Motion to Transfer

Defendant also requests a transfer from the St. Clair County Jail to the Milan Detention Facility.  Def. Mot. to Transfer at 1 (cm/ecf page) (Dkt. 43).  According to Defendant, he has a "history of depression and related psychological problems," but, unlike his previous experience at Milan, he has not received any psychological services at St. Clair "because there is no staff psychologist or similar medical officer at the jail." <u>Id.</u> at 1-2 (cm/ecf pages).  Defendant further claims that "he has noticed a disparity in treatment between caucasian inmates and African American inmates." <u>Id.</u> at 2 (cm/ecf page).[3]

Defendant has provided no authority empowering a district court to direct the U.S. Marshals Service to house a criminal defendant at any specific location. <u>See</u> <u>Moyers v. Shudan</u>, No. 3:07-cv-393, 2009 WL 1813969, at *2 (E.D. Tenn. June 24, 2009) (denying the plaintiff's motion "to order the U.S. Marshals Service to house him in a detention center other than the Blount County Detention Center while plaintiff is in East Tennessee for the trial of this action," and noting that the "housing of federal prisoners pending court proceedings is within the discretion of the U.S. Marshals Service and this Court will not interfere with that discretion, absent extraordinary circumstances"); <u>see also</u> <u>United States v. Espinoza-Arevalo</u>, No. 14-00332-02-CR-W-BP, 2015 WL 9598299, at *3 (W.D. Mo. Dec. 30, 2015) (recognizing that the United States Marshal Service has "broad authority to determine where to house it prisoners").

---

[3] The Government offers "no position on where the United States Marshals service should house Bigham and believes that his motion should be denied so that the Marshals Service can appropriately exercise its discretion in making that decision." Gov't Resp. at 13.

Nor does Defendant's motion explain what specific disparate treatment he witnessed or how he has been treated differently on account of his race, or the severity of his medical condition or the circumstances surrounding the his perceived lack of psychological services. Absent any factual substantiation to suggest that extraordinary circumstances exist in this case, Defendant's vague and conclusory allegations of racial discrimination and lack of medical care do not warrant a transfer, even assuming the Court had the authority to do so.

Therefore, the Court denies Defendant's motion to transfer.

### C.  Motion to Suppress Identification Evidence

Defendant's third motion seeks to suppress Officer's Peterson's prior out-of-court identification, as well as any future in-court identifications of Defendant. There appears to be no real dispute surrounding the facts of Officer Peterson's previous identification of Defendant. On August 2, 2014, Officer Peterson initiated a traffic stop of a black Lexus automobile driven by an African American male. When she approached the vehicle, Officer Peterson noticed that the driver was sweating profusely and displaying body tremors. When Officer Peterson ordered the driver out of the vehicle, he did not comply; rather, he drove away and fled the scene. Officer Peterson pursued the driver until safety concerns triggered termination of her pursuit, but not before she obtained the license plate number of the vehicle.

Subsequent investigation of the plate number led other officers to discover both the Defendant's name and that the vehicle was registered to Defendant's mother, Odell Hamilton. Having learned Defendant's name from Officer Thomson, Officer Peterson then ran the name through the Michigan Law Enforcement Information Network ("LEIN") and recognized Defendant as the driver of the Lexus.[4]

---

[4] Defendant's motion contends that "Ypsilanti police officers pulled the official photograph of Mr. Bigham from his driver's license or state identification. This single photograph of Jerry Bigham was shown to Officer Peterson who identified that photo as the person that she stopped

5

Defendant argues that Officer Peterson's identification of Defendant as the driver of the Lexus was impermissibly suggestive in violation of the Due Process Clause, because she only viewed one photograph of Defendant, as opposed to either a photo array composed of multiple photographs or a corporal lineup.  Def. Mot. to Suppress at 5 (Dkt. 44).  According to Defendant, Officer Peterson's identification of Defendant should be suppressed.  Id.

The Government argues in response that any identification should not be suppressed because due-process concerns are implicated only upon "improper police misconduct," Gov't Resp. at 14 (quoting Perry v. New Hampshire, 132 S. Ct. 716, 721 (2012)) (emphasis in original), and "there is nothing improper about a law enforcement officer searching a law enforcement database in real time and recognizing a suspect as others relay information about a developing investigation."  Id.  The Government also argues that, under the totality of the circumstances, Officer Peterson's identification remains reliable and should not be suppressed. Id. at 17-19.  The Court agrees with the Government.

---

on August 2, 2014, and who fled the scene."  Def. Mot. to Suppress at 4-5 (Dkt. 44).  However, Defendant provided no citation to any record evidence to support this factual assertion.

After the hearing on Defendant's motions, the Court afforded Defendant the opportunity to submit such evidence.  Thereafter, Defendant provided a portion of a detention hearing transcript, in which the Assistant United States Attorney made the following statement:

> Officers determined -- officers, I would proffer, your Honor, as we discussed at sidebar that a picture of the Defendant was shown to the officer, Officer Peterson of Ypsilanti police.  That officer was the one who was involved in the traffic stop of the Defendant. Upon seeing that picture that had been pulled from a law enforcement database, Officer Peterson immediately identified that individual, Mr. Bigham, as the individual that she had pulled over.

10/19/2015 Detention Hr'g Tr. at 8-9 (Dkt. 36).  Aside from this one statement, Defendant has provided no other evidence to suggest that another officer showed a picture of Defendant to Officer Peterson.  Nevertheless, the government's statement during the detention hearing appears to be in direct conflict with the statements in Officer Peterson's report, which describes the other officers providing Officer Peterson with Defendant's name, at which point she ran that name through LEIN and immediately identified Defendant based on his LEIN picture.  See Ex. B to Gov't Resp. to Def. Mot. for Revocation of Detention Hr'g at 7 (cm/ecf page) (Dkt. 39-3).  The Court concludes that Officer Peterson's report is the more reliable version of events.

6

The Due Process Clause protects against impermissibly suggestive photograph identification procedures that "give rise to a very substantial likelihood of irreparable misidentification." Neil v. Biggers, 409 U.S. 188, 197 (1972); see also Perry, 132 S. Ct. at 724 ("[D]ue process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary"). Whether improper police conduct created a "substantial likelihood of misidentification," thereby warranting the suppression of the identification, ultimately turns on a case-by-case assessment. Perry, 132 S. Ct. at 724. A court must determine whether the identification procedure was suggestive, and, if so, whether the identification is still reliable under the totality of the circumstances. United States v. Washington, 714 F.3d 962, 967 (6th Cir. 2013). Under the totality-of-the-circumstance approach, courts consider the following five factors:

> [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.

Mills v. Cason, 572 F.3d 246, 251 (6th Cir. 2009) (quoting Neil, 409 U.S. at 199).

In this case, it can hardly be said that a police officer's use of a criminal database to secure a suspect's photograph during an ongoing investigation constitutes the type of improper conduct the Due Process Clause is meant to deter. Perry, 132 S. Ct. at 721 (observing that Supreme Court decisions on the admissibility of identifications "aim to deter police from rigging identification procedures"). Officer Peterson's use of LEIN to obtain a photograph of Defendant in this context does not amount to the type of "rigging" the Constitution seeks to avoid. And because Officer Peterson viewed the photograph alone, there was certainly no coercive pressure to make an identification arising from the presence of another officer. See Manson v. Brathwaite, 432 U.S. 98, 116 (1977). Defendant may still test the reliability of Officer Peterson's identification "through the rights and opportunities generally designed for that

7

purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." Perry, 132 S. Ct. at 721. For this reason alone, the Court denies Defendant's motion to suppress the identification.

Nevertheless, assuming the use of Defendant's LEIN photograph was improper and unduly suggestive, Officer Peterson's identification is still sufficiently reliable under the five-factor test and does not warrant suppression.

Regarding the first two factors, the encounter between Officer Peterson and Defendant occurred during a traffic stop. Officer Peterson engaged in a conversation with Defendant, during which Officer Peterson was close enough to observe Defendant sweating profusely and displaying body tremors. Although Defendant contends that there was "limited time and opportunity to view the driver of the vehicle," Def. Mot. to Suppress at 9, there is nothing to suggest that Officer Peterson's view of Defendant was obstructed or impaired in any meaningful manner, or that the traffic stop lasted only a few seconds. Defendant also argues that Officer Peterson's attention would have been on the driver's arms and hands, in the event the driver had a weapon, and "would not have been focused on the face." Id. This assertion is pure conjecture and unsupported by the facts. Here, it is clear that Officer Peterson was close enough to see Defendant's excessive perspiration, which would suggest that Officer Peterson's attention during this traffic stop was sufficient. These factors weigh in favor of a reliable identification.

Regarding the third factor, Defendant argues that, "other than 'black male' Officer Peterson appears to have given no further description." Id. The Government does not address this factor, and the Court finds that any alleged description amounting only to "black male" would not weigh in favor of reliability.

As for the fourth factor, after Officer Peterson ran Defendant's name through LEIN, she "immediately recognized the male in the picture, which matched the person [she] identified as driving the above stated vehicle."  Ypsilanti Police Dep't Case Report ("Case Report"), Ex. B to Gov't Resp. to Def. Mot. for Revocation of Detention Hr'g at 7 (cm/ecf page) (Dkt. 39-3). Although Defendant notes that the presentation of multiple photographs might have lessened her certainty, Def. Mot. at 9, this does not diminish the fact that Officer Peterson's immediate recognition of Defendant weighs in favor of reliability.

Finally, the fifth factor weighs in favor of reliability.  Based on Officer Peterson's report, the traffic stop occurred around 7:25pm on August 2, 2014.  Case Report at 5 (cm/ecf page). According to the time on her report, which included her subsequent identification of Defendant, Officer Peterson entered the report at 4:10am on August 3, 2014.  Id.  The Government contends that these dates and times demonstrate that Officer Peterson's identification occurred "mere hours after Bigham fled[.]"  Gov't Resp. at 18.  Defendant contends that the identification occurred within 24-to-48 hours of the crime.  See Def. Mot. to Suppress at 10.  Whether it was only a few hours or 48 hours, the length of time between the crime and the identification was relatively short.  Therefore, under the totality of the circumstances, the Court concludes that the identification is reliable.

Accordingly, the Court denies Defendant's motion to suppress Officer Peterson's identification.[5]

**D.  Motion to Prohibit Use of "Felon" and Suppress Prior Criminal Record**

Defendant seeks to prohibit the use of the word "felon" with regard to his felon in possession of a firearm charge, 18 U.S.C. § 922(g)(1).  Def. Mot. to Prohibit at 19 (Dkt. 48). According to Defendant, use of the word "felon" in these proceedings "will necessarily create

---

[5] Defendant also requests an evidentiary hearing, Def. Mot. to Suppress at 10, which is denied, because it would serve no useful purpose.

undo [sic] prejudice in the minds of the jurors," and, therefore, Defendant offers to stipulate instead to being "ineligible to possess a firearm." Id.

This precise request was recently addressed by another judge in this District. See United States v. Nixon, No. 15-cr-20020, Dkt. 54 (E.D. Mich. Oct. 14, 2015) (Drain, J.). In Nixon, the court recognized that use of the term "felon" could be unfairly prejudicial to a defendant. Id. at 11. However, the court went on to hold that the defendant's suggestion that the jury being told simply that he is "ineligible to possess a firearm," as opposed to receiving the statutory language that the defendant had a prior conviction for a crime punishable by imprisonment for a term exceeding one year, "would eliminate from the jury's consideration one of the elements of the crime." Id.; accord United States v. Watson, 787 F. Supp. 2d 667, 677 (E.D. Mich. 2011) (recognizing that it might be unfairly prejudicial for the jury to hear that the defendant was convicted of a drug crime, thus permitting the defendant to stipulate to having been convicted of a crime punishable by more than a year in prison).

As Defendant has offered no reason why the Nixon approach should not be followed in this case, the Court finds that opinion persuasive and adopts the same conclusion. Accordingly, Defendant's limited request to stipulate that he is "ineligible to possess a firearm," in lieu of using the term "felon," is denied.

Defendant's motion also argues that, in the event he chooses to testify at trial, his prior criminal record — specifically, one prior drug offense and two prior fleeing and eluding offenses — may not be used for impeachment purposes. Def. Mot. to Prohibit at 20. Defendant states that his drug conviction is over 20 years old, his fourth-degree fleeing case is 17 years old, and his third-degree fleeing case is over 11 years old. Id. According to Defendant, the probative value in admitting these convictions does not outweigh the prejudicial effect. Id. at 21.

In response, the Government states that it will not seek to impeach Defendant with any convictions older than 10 years. Gov't Resp. at 24. However, the Government notes that

Defendant has at least two more recent felony convictions — a delivery-manufacturing of marijuana conviction from 2010, and a third-degree fleeing and eluding conviction from 2012. Id. Having filed no reply, Defendant does not appear to challenge the Government's intended use of these two convictions during trial, if Defendant takes the stand.

Still, as discussed at the hearing on these motions, a calculation of prejudice versus probative value is often best determined during trial. Therefore, Defendant's motion regarding his prior convictions is denied without prejudice.

## II.  CONCLUSION

For the reasons stated above, the Court denies Defendant's motions to reconsider, to transfer, to suppress identification evidence, to prohibit the use of the word "felon," and to suppress his prior criminal record (Dkts. 42, 43, 44, 48).

SO ORDERED.


Dated:  February 25, 2016                          s/Mark A. Goldsmith
        Detroit, Michigan                          MARK A. GOLDSMITH
                                                   United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 25, 2016.

                                                   s/Karri Sandusky
                                                   Case Manager