UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,                            Case No. 14-cr-20676

v.                                              HON. MARK A. GOLDSMITH

JERRY WAYMEN-TIMOTHY BIGHAM

              Defendant.

_____/

### OPINION AND ORDER DENYING DEFENDANT'S MOTIONS FOR RECONSIDERATION (Dkt. 55), FOR SEPARATE TRIAL OF COUNTS (Dkt. 57), TO QUASH FOR PRE-INDICTMENT DELAY (Dkt. 59), TO DISMISS FOR PROSECUTORIAL MISCONDUCT (Dkt. 60), TO SUPPRESS STATEMENTS (Dkt. 61), TO SUPPRESS EVIDENCE (Dkt. 62), AND TO EXCLUDE PRIOR ACTS EVIDENCE (Dkt. 63)

Defendant Jerry Waymen-Timothy Bigham is charged with three counts of possession with intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1), and one count of felon in possession of a firearm, 18 U.S.C. § 922(g)(1). First Superseding Indictment (Dkt. 51).

Defendant filed a motion to reconsider the denial of his previous motion to be transferred to Milan Detention Facility (Dkt. 55), to which the Government filed a response (Dkt. 56). Defendant subsequently filed six more motions: (i) for separate trial of counts (Dkt. 57); (ii) to quash for pre-indictment delay (Dkt. 59); (iii) to dismiss for prosecutorial misconduct (Dkt. 60); (iv) to suppress statements (Dkt. 61); (v) to suppress evidence (Dkt. 62); and (vi) to exclude prior acts evidence (Dkt. 63). The Government filed a response to these motions (Dkt. 64). An evidentiary hearing was held regarding Defendant's motion to suppress evidence.

After the hearing, Defendant filed a supplemental brief regarding his motions to quash for pre-indictment delay, to dismiss for prosecutorial misconduct, to suppress statements, and to suppress evidence (Dkt. 69). The Government filed a supplemental brief in response (Dkt. 70).

1

Defendant then filed a reply (Dkt. 71).  For the reasons discussed below, the Court denies all seven of Defendant's motions.

## I. BACKGROUND

On March 24, 2014, Officers Anthony Schembri and Gregory Bergland of the Ypsilanti Police Department were conducting road patrol on Maus Avenue in Ypsilanti.  7/8/2016 Hr'g Tr. at 8-10 (Dkt. 68).  The officers were sitting in a parked scout car on the north side of Maus facing west.  Id. at 8.  At approximately 11:30 a.m., Schembri observed Defendant driving eastbound on Maus in a blue Denali.  Id. at 12.  As Defendant drove by Schembri's vehicle, Schembri observed Defendant lean back in the driver's seat – an action that Schembri interpreted as an attempt to conceal his identity from the officers.  Id.  Believing this to be suspicious behavior, as well as a violation of the Michigan Motor Vehicle Code, Schembri made a U-turn and began following Defendant's vehicle.  Id.

The officers continued to follow Defendant as they reached the intersection of Maus and Ecorse.  Id. at 13.  As Defendant pulled up to the intersection, Schembri observed that Defendant did not stop at the limit line, but instead continued into the pedestrian crosswalk before coming to a complete stop.  Id.  Schembri stated that this constituted a civil traffic infraction.  Id. Schembri testified that he could not recall whether his vehicle was alongside or behind Defendant's vehicle when he observed that Defendant had failed to stop at the limit line before entering the crosswalk.  Id. at 31.

After stopping in the crosswalk, Defendant proceeded to make a right turn onto Ecorse. Id. at 14.  Schembri and Bergland followed Defendant onto Ecorse and into a parking lot approximately 200 yards down the road.  Id. at 43.  Schembri testified that he activated his emergency lights either when he turned onto Ecorse or as he was pulling into the parking lot

behind Defendant.  Id. at 41-42.  Schembri stated that his lights were most likely activated within 10 to 15 seconds of when Defendant failed to stop at the limit line.  Id. at 43.  According to Schembri, when the emergency lights in a police vehicle are activated, the dashboard camera saves the prior 10 to 15 seconds of recording and continues recording until 10 to 15 seconds after the emergency lights are deactivated.  Id.  Schembri testified that even if his vehicle had been stopped alongside Defendant's vehicle at the intersection of Maus and Ecorse, the camera lens was wide enough to have captured Defendant's vehicle as it was in the crosswalk.  Id. at 45.

Once the officers entered the parking lot, they parked behind Defendant.  Id. at 15. Defendant then proceeded to get out of his vehicle and walk towards the officers, but was immediately ordered by Schembri to get back into his vehicle.  Id. at 15.  Schembri then got out of his vehicle, walked to the driver's side door of Defendant's vehicle, and asked Defendant for Defendant's driver's license.  Id. at 16.  As Schembri approached the Defendant's vehicle, he could smell a strong odor of marijuana.  Id.  Defendant informed Schembri that he did not have his license on him, and instead provided Schembri with a Michigan Identification Card.  Id. Because Defendant's failure to possess a license while driving constituted a misdemeanor offense, Schembri placed Defendant under arrest.  Id. at 17.

After arresting Defendant, Schembri asked him if there was marijuana in the vehicle. Defendant replied that there was "a lot" of marijuana located in a bag inside the vehicle.  Id. Defendant denied that he intended to sell the marijuana and stated that it was for his own personal use.  Id.  After Defendant was secured in Schembri's vehicle, Schembri had his canine sniff the exterior of the vehicle for narcotics.  Id. at 19.  After the canine did not give Schembri any alerts, Schembri had the canine enter the interior of the vehicle and sniff a duffel bag located on the front passenger's seat.  Id.  The canine then alerted Schembri to the presence of narcotics.

Id.  Schembri searched the bag and discovered two large Ziploc bags containing marijuana.  Id. Schembri also discovered a digital scale, plastic baggies, cigars, and a Tupperware container that contained a small amount of marijuana.  Id. at 19-20.  A search of Defendant also uncovered $870 in cash.  Id. at 18.

A later incident, also involving Defendant, became relevant to this case. On August 2, 2014, Officer Peterson of the Ypsilanti Police Department conducted a traffic stop of a black 1998 Lexus.  Search Warrant & Aff., Ex. A to Gov't Resp., at 2, ¶ E (Dkt. 23-1).  The driver was a black male who was later identified as Defendant.  Id.  Upon being stopped, Defendant informed Peterson that he did not have his driver's license on him.  Id.  When Peterson instructed Defendant to step out of his vehicle, Defendant put his car in drive and drove away at a high rate of speed.  Id.  Peterson began pursuing Defendant but terminated her pursuit because of the amount of pedestrian and vehicular traffic in the area.  Id.

After terminating her pursuit, Peterson was informed by dispatch that a citizen had called 911 advising that a driver of a black Lexus had thrown a bag out of his window in front of Pinewood Avenue.  Id. at 2, ¶ F.  Peterson then drove to that area and recovered an orange lunch bag containing marijuana, sandwich baggies, and a digital scale.  Id.  Peterson stated that the marijuana and sandwich baggies were packaged in a manner consistent with narcotics trafficking.  Id.

Peterson subsequently discovered that the black Lexus was registered to Odell Hamilton, Defendant's mother.  Id. at 2, ¶ G.  Peterson then entered Defendant's information into the Courts and Law Enforcement Management Information System and found a report regarding Defendant's March 24, 2014 arrest.  Id. at 2, ¶ G.  Another background check on Defendant revealed that he had an electric and phone bill in his name at a residence located at 1073 Levona

Street in Ypsilanti.  Id. at 3, ¶ I.  A search of the trash at 1073 Levona uncovered various baggies containing marijuana residue.  Id. at 4, ¶ M.   Officers also observed a black Lexus in the driveway of the home.  Id.

On August 9, 2014, officers executed a search warrant at 1073 Levona.  While executing the warrant, officers discovered marijuana as well as a Taurus .44 caliber revolver, Model 445. First Superseding Indictment at 3; Def. Mot. For Separate Trials at 3.

Defendant now stands charged for possession with intent to distribute (by separate counts for the incidents on March 24, August 2 and August 9) and for felon in possession of a firearm. Id.

## II.  ANALYSIS

### A.  Motion for Reconsideration

Defendant first moves this Court to reconsider its order denying his motion to be transferred to Milan Detention Facility (Dkt. 43).  Regarding motions for reconsideration, the Local Rules for the Eastern District of Michigan provide that "[t]he movant must not only demonstrate a palpable defect by which the Court and the parties and other persons entitled to be heard have been misled but also show that correcting the defect will result in a different disposition of the case."  L.R. 7.1(h)(3) (E.D. Mich. July 1, 2013). "A 'palpable defect' is a defect that is obvious, clear, unmistakable, manifest or plain."  Witzke v. Hiller, 972 F. Supp. 426, 427 (E.D. Mich. 1997).  Furthermore, "a motion for reconsideration is not an appropriate vehicle for raising new facts or arguments."  United States v. A.F.F., 144 F. Supp. 2d 809, 812 (E.D. Mich. 2001). "Motions for reconsideration do not allow the losing party to raise new legal theories that should have been raised earlier."  Khoshiko v. Deutsche Bank Trust Co. Ams., No. 12-CV-14717, 2013 WL 5657704, at *1 (E.D. Mich. Oct. 17, 2013).

5

In his initial motion seeking transfer, Defendant argued that he was entitled to be transferred under the "Due Process Clause."  Def. Mot. to Transfer at 2 (cm/ecf page) (Dkt. 43). After a hearing, Defendant was given an opportunity to provide the Court with additional authority that would allow the Court to order Defendant transferred to Milan.  After Defendant failed to provide any such authority, the Court issued an opinion denying Defendant's motion. See 2/25/2016 Op. & Order (Dkt. 54).

In his motion for reconsideration, Defendant now raises the new legal theory that 28 U.S.C. § 1651, commonly referred to as the All Writs Act, provides the Court with the authority to order the Marshals Service to transfer him to Milan.  Def. Mot. for Recon. at 1 (Dkt. 55). Because this is a legal theory that was not raised in Defendant's initial motion seeking transfer, Defendant is prohibited from now raising it in his motion for reconsideration.  A.F.F., 144 F. Supp. 2d at 812.

Even if this argument were properly before the Court, it is without merit.  The All Writs Act states that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651.   The Sixth Circuit has noted that a purpose of the All Writs Act is to enable federal courts "to issue such commands 'as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'"  United States v. Perry, 360 F.3d 519, 533 (6th Cir. 2004) (quoting United States v. New York Tel. Co., 434 U.S. 159, 172 (1977)).

Importantly, "[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling."  Id.   "Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them

to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." Pennsylvania Bureau of Corr. v. U.S. Marshals Serv., 474 U.S. 34, 43 (1985). As the Government correctly notes, 18 U.S.C. § 4086 "specifically addresses the particular issue at hand," and is thus controlling. Perry, 360 F.3d at 533. The statute states that "United States marshals shall provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending commitment to an institution." 18 U.S.C. § 4086. This authority has been designated to the Marshals Service, as opposed to the courts, because "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." Procunier v. Martinez, 416 U.S. 396, 405 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989). Because 18 U.S.C. § 4086 addresses Defendant's claim, the All Writs Act is inapplicable.

### B. Motion for Separate Trials of Counts

Defendant next argues that count one of the first superseding indictment should be tried separately from the remaining counts. Def. Mot. to Sever at 5 (Dkt. 57). Defendant contends that joinder of the counts is improper under Rule 8 of the Federal Rules of Criminal Procedure, and that severance of the counts is required under Rule 14. Id.

Federal Rule of Criminal Procedure 8(a) allows the Government to join multiple offenses "if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." "Rule 8(a) is construed in favor of joinder, but failure to meet the requirements of the rule may constitute misjoinder as a matter of law." United States v. Hatton, 643 F. App'x 574, 579 (6th Cir. 2016). The spirit of Rule 8(a) is to "promote the goals of trial convenience and judicial economy." United States v. Graham, 275 F.3d 490, 512 (6th Cir. 2001). "Whether joinder was proper under

Rule 8(a) is determined by the allegations on the face of the indictment." Hatton, 643 F. App'x at 579.

Defendant argues that count one should be tried separately because it occurred on March 24, 2014, and the remaining counts pertain to events that occurred on August 2, 2014, and August 9, 2014. Def. Mot. to Sever at 5. Defendant argues that the counts involve completely different incidents and rely on different facts and circumstances. Id. at 4.

Defendant's contentions notwithstanding, the face of the first superseding indictment demonstrates that count one is of the exact same character as counts two and three. Counts one, two, and three all charge Defendant with possession with intent to distribute controlled substance under 21 U.S.C. § 841(a)(1). While Defendant argues that joinder is improper because of the five-month gap between count one and the remaining counts, the Sixth Circuit has noted that "the government's case for joinder depends upon whether the two offenses were of the 'same or similar character,'" rather than focusing upon the gap between each offense listed in the indictment. United States v. Chavis, 296 F.3d 450, 458 (6th Cir. 2002) (quoting Fed. R. Crim. P. 8(a)). Therefore, because count one is the exact same charge as counts two and three, joinder is proper under Rule 8(a).

"Even when joinder is appropriate under Rule 8(a), a district court may, in its discretion, grant the defendant a severance if it appears that the defendant is prejudiced by a joinder of the offenses." United States v. Hang Le-Thy Tran, 433 F.3d 472, 478 (6th Cir. 2006). Federal Rule of Criminal Procedure 14(a) states that "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts." "In order to prevail on a motion for severance, a defendant must show compelling, specific, and actual prejudice from a court's refusal to grant the motion to sever."

United States v. Saadey, 393 F.3d 669, 678 (6th Cir. 2005). "A defendant is prejudiced if the jury would be unable to keep the evidence from each offense separate and unable to render a fair and impartial verdict on each offense." United States v. Deitz, 577 F.3d 672, 692 (6th Cir. 2009). A "conclusory statement that the joinder of the counts 'affected' the jury's ability to render a fair and impartial verdict does not suffice to show substantial prejudice." Hang Le-Thy Tran, 433 F.3d at 478. Furthermore, "an unproven assertion is not compelling evidence of actual prejudice." Saddey, 393 F.3d at 679.

Defendant argues that, after hearing evidence regarding the events of August 2, 2014, and August 9, 2014, the jury will be prejudiced against him when deciding his culpability regarding the events of March 24, 2014. However, Defendant fails to elaborate on how exactly he will be prejudiced by all counts being tried together. Defendant's lone assertion in his motion is that "[t]he jury will automatically believe that he was 'knowingly and intentionally' delivering marijuana if they are allowed to hear about both incidents." Def. Mot. to Sever at 5. As noted above, "an unproven assertion is not compelling evidence of actual prejudice" and a "conclusory statement that the joinder of the counts 'affected' the jury's ability to render a fair and impartial verdict does not suffice to show substantial prejudice." Hang Le-Thy Tran, 433 F.3d at 478; Saddey, 393 F.3d at 679. Defendant's lone assertion, without more, is insufficient to prove that he would suffer "compelling, specific, and actual prejudice" from this Court's refusal to sever the counts. Hang Le-Thy Tran, 433 F.3d at 478.

In support of his argument for severance, Defendant cites to Cross v. United States, 335 F.2d 987 (D.C. Cir. 1964), which is distinguishable. In Cross, the defendant sought separate trials of counts because he sought to give testimony on one count while staying silent on the other count. Id. at 989. The D.C. Circuit held that "[p]rejudice may develop when an accused

9

wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence." Id. Here, Defendant has not made a claim that he wishes to testify regarding only count one. Indeed, Defendant does not state in his motion that he intends to testify regarding any of the counts in the first superseding indictment. Furthermore, although the events underlying count one took place at a time distinct from the other counts, they took place in the same place, Ypsilanti, and involve very similar evidence. Therefore, Cross does not apply.

### C.  Motion to Quash the First Superseding Indictment for Pre-Indictment Delay

Defendant argues that his due process rights were violated by the delay between his arrest on March 24, 2014, and his subsequent indictment on January 14, 2016. Def. Mot. to Quash at 4 (Dkt. 59). Defendant argues that he was prejudiced by this delay and that, as a result, the first superseding indictment should be quashed. Id.

"The Supreme Court recognizes that the Due Process Clause of the Fifth Amendment protects against oppressive pre-indictment delay." United States v. Schaffer, 586 F.3d 414, 424 (6th Cir. 2009). Nevertheless, "the acceptability of a pre-indictment delay is generally measured by the applicable statute of limitations." Id. Therefore, "[a] successful Due Process claim for pre-indictment delay requires that a defendant establish: (1) prejudice to his right to a fair trial; and (2) that the delay was intentionally caused by the government in order to gain a tactical advantage." United States v Wright, 343 F.3d 849, 859 (6th Cir. 2003). In regard to the prejudice element, the defendant has to show that the delay caused him actual prejudice. Schaffer, 586 F.3d at 425. The Sixth Circuit has noted that "[t]he standard for pre-indictment delay is nearly insurmountable, especially because proof of actual prejudice is always speculative." United States v Rogers, 118 F.3d 466, 477 n.10 (6th Cir. 1997).

The statute of limitations for count one, possession with intent to distribute a controlled substance, 21 USC § 841(a)(1), is five years.  18 U.S.C. § 3282.  The first superseding indictment was entered on January 14, 2016, less than two years after March 24, 2014, the date of the offense alleged in count one.  Because the indictment was filed within the applicable statute of limitations, Defendant must demonstrate that the pre-indictment delay prejudiced his right to a fair trial and "the delay was intentionally caused by the government in order to gain a tactical advantage."  Wright, 343 F.3d at 859.

Regarding the prejudice element, Defendant notes that a video recording taken from Schembri's police dashboard camera is no longer available.  Defendant contends that this video would have shown that he stopped his vehicle before it reached the limit line, and, therefore, Schembri did not have cause to pull him over for a civil infraction.  However, Schembri's testimony at the evidentiary hearing was uncontroverted.  Schembri testified that Defendant drove past the limit line and stopped in the crosswalk before turning on Ecorse.  7/8/2016 Hr'g Tr. at 13.  While Defendant presented the testimony of Christopher Brown, a friend who happened to be driving by at the time of the stop, Brown testified that he was not paying attention to whether Defendant had stopped prior to reaching the limit line.  Id. at 67.  Therefore, there is no evidence to support Defendant's contention that he was prejudiced by the destruction of the video.

In addition, Defendant has not presented any evidence that the video was intentionally destroyed by the Government in order to gain a tactical advantage.  Schembri testified that police dashboard camera recordings are erased after 30 days as a matter of course unless a special request is made to preserve the tape.  Id. at 39.  Defendant did not present evidence to rebut this testimony regarding the preservation of police videos.  Furthermore, Defendant did not present

11

any evidence to contradict Schembri's testimony that the video would have shown Defendant driving over the limit line.  While Defendant argues that the police should have made a special request to preserve the video as exculpatory evidence, Defendant has not offered any evidence that the video showed him stopping prior to the limit line.  Based on Schembri's testimony, destruction of the video would have actually been harmful to the Government's case.  Because Defendant has failed to demonstrate either prejudice or an intent to gain a tactical advantage by the Government, his motion to quash is denied.

### D.  Motion to Dismiss for Prosecutorial Misconduct

Defendant next argues that the prosecutor engaged in misconduct when the prosecutor returned the first superseding indictment after Defendant rejected a plea offer.  Def. Mot. to Dismiss for Pros. Misc. at 3-4 (Dkt. 60).  Defendant notes that the first superseding indictment added a count for the events of March 24, 2014 after the plea offer was rejected.  Id.

 "[I]n order to show vindictive prosecution there must be (1) exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; (4) the intent to punish the defendant for exercise of the protected right."  United States v. Suarez, 263 F.3d 468, 479 (6th Cir. 2001).  While "prosecutorial vindictiveness can potentially be found in the pre-trial addition of charges following pre-trial assertions of protected rights," the charges are not vindictive if they are brought "simply as the result of failure of the plea bargaining process."  Id.  If the first three elements are met, "this may help establish grounds to believe the fourth is present, that there is the required 'realistic likelihood of vindictiveness,' which the government would have to rebut."  Id. (quoting Bragan v. Poindexter, 249 F.3d 476, 481-482 (6th Cir. 2001)).  "The government bears the burden of rebutting the presumption with 'objective, on-the-record explanations' such as 'governmental discovery of previously unknown

12

evidence' or 'previous legal impossibility.'" <u>United States v. LaDeau</u>, 734 F.3d 561, 566 (6th Cir. 2013) (quoting <u>Bragan</u>, 249 F.3d at 482).

Defendant can demonstrate that, by electing to go to trial, he exercised a protected right. However, none of the remaining requirements for a claim of vindictive prosecution is present here. The Sixth Circuit has held that a prosecutor's desire to get a defendant to plead guilty does not rise to the level of a "special stake in the proceeding." <u>United States v. Zolicoffer</u>, 570 F. App'x 540, 544 (6th Cir. 2014). Defendant does not allege any particular stake the prosecutor had in this case other than the desire for Defendant to plead guilty.

Furthermore, Defendant is unable to demonstrate that the prosecutor's actions were unreasonable. While Defendant claims that the Government waited to charge him with count one as a means to punish him for rejecting a plea offer, the Government notes that it had previously believed that Defendant would be charged in state court for the events of March 24, 2014. Gov. Resp. at 13 (Dkt. 64). The police report that Defendant attached to his motion supports the Government's contention that state prosecutors were initially in charge of the investigation. In the report, Schembri wrote that he spoke with "YPD Officer Thomson who inquired about the status of this case due to the possibility of Jerry Bigham being charged federally." Police Report, Ex A. to Def. Mot., at 10 (Dkt. 60-1). This communication suggests that there was discussion between state and federal prosecutors regarding who would be prosecuting Defendant for the events of March 24, 2014. In addition, charges are not vindictive if they are brought "simply as the result of failure of the plea bargaining process." <u>Suarez</u>, 263 F.3d 479. Defendant has not demonstrated that this charge was brought unreasonably.

Because the first three elements were not met, there are no grounds to believe that the Government had the intent to punish Defendant for exercising his right to go to trial. Since only

13

the first element was met, the burden does not shift to the Government and Defendant's motion fails.

### E.  Motion to Suppress Evidence

Defendant next argues that the evidence discovered as a result of the March 24, 2014 traffic stop should be suppressed.  Defendant contends that Schembri did not have probable cause to stop his vehicle, and that all evidence discovered as a result of the unlawful stop should be suppressed.  Def. Mot. to Suppress Evid. at 4 (Dkt. 62).

"A police officer legally may stop a car when he has probable cause to believe that a civil traffic violation has occurred."  United States v. Blair, 524 F.3d 740, 748 (6th Cir. 2008). "Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion.  When a traffic stop is supported by probable cause, an officer's subjective intent is irrelevant."  Id.

At the evidentiary hearing, Schembri testified that he initially became suspicious of Defendant when he observed him lean back in his vehicle in an attempt to conceal his face. 7/8/2016 Hr'g Tr. at 12.   While Schembri stated that the act of leaning back while driving constituted a civil infraction, he was unable to cite a section of the Michigan Motor Vehicle Code in support of this statement.  Id. at 27.  After Schembri observed Defendant leaning back, he made a U-turn and began following Defendant as Defendant headed east on Maus.  Id. at 12. Once Defendant reached the light at the intersection of Maus and Ecorse, Schembri observed him fail to stop at the limit line and instead stop in the crosswalk.  Id. at 13.

Under Mich. Comp. Laws § 257.612(1)(c)(i), "[v]ehicular traffic facing a steady red signal alone shall stop before entering the crosswalk on the near side of the intersection or at a

limit line when marked."  Schembri's testimony demonstrates that, by failing to stop at the limit line prior to entering the crosswalk, Defendant violated Mich. Comp. Laws § 257.612.

Notably, Brown's testimony did not contradict Schembri's.  Brown testified that as he was driving by the intersection of Maus and Ecorse, he observed Defendant waiting at the light. 7/8/2016 Hr'g Tr. at 63.  Brown testified that another car turned out before Defendant and then Defendant proceeded to turn out behind Brown.  Id. at 67.  When asked if he was able to observe if Defendant stopped at the limit line before entering the crosswalk, Brown testified that he was not paying attention to where Defendant was stopped.  Id.  Therefore, Schembri's testimony that Defendant failed to stop at the limit line is uncontroverted.  Because Defendant committed a civil infraction, Schembri had probable cause to stop him regardless of Schembri's subjective belief that Defendant had committed an earlier infraction by leaning back in his vehicle.  Blair, 524 F.3d at 748.

A decision by the Sixth Circuit is informative.  In United States v. Hill, 195 F.3d 258, 267 (6th Cir. 1999), the Court held that the officer had probable cause to stop the defendant, even when the officer initially started following the defendant simply for driving a U-Haul.  In Hill, the officer testified that he began following the defendant because, in the officer's experience, U-Hauls were commonly used to transport narcotics.  Id.  However, the officer did not pull over the defendant until the officer observed the defendant speeding.  Id.  The Sixth Circuit held that despite the fact that it was improper to follow a vehicle based simply on vehicle type, the fact that the defendant did commit a civil infraction (speeding) provided the requisite probable cause to stop the defendant.  Id.

Like the officer in Hill, Schembri began following a suspect for activity that was not a violation of the law — here, simply leaning back in his vehicle — but ultimately probable cause

was established to make a stop once the suspect committed an actual civil infraction — failing to stop at the limit line. Because the stop was lawful, there is no basis to suppress the fruits of the search. The motion to suppress must be denied.

### F. Motion to Suppress Statements

Defendant next argues that the statements he made after being placed under arrest should be suppressed. Def. Mot. to Suppress Statements at 1 (Dkt. 61). The Government indicated in its initial response and in its response to Defendant's supplemental brief that it does not intend to introduce the statements made by Defendant after he was arrested. Gov. Resp. at 18; Gov. Supp. Br. at 12 (Dkt. 70). This motion is denied as moot.

### G. Motion to Exclude Prior Acts Evidence

Finally, Defendant moves to exclude evidence of three prior arrests under Rule 404(b) of the Federal Rules of Evidence. Def. Mot. to Exclude Evid. at 1 (Dkt. 63). Each act will be addressed in turn.

On July 14, 2009, officers from the Washtenaw County Sherriff's Department observed Defendant driving at a high rate of speed through a parking lot. Case Report, Ex. C to Def. Mot. to Exclude Evid., at 3 (Dkt. 63-4). The officers then followed Defendant in their patrol vehicle and activated their emergency lights in an attempt to pull Defendant over. Id. Defendant continued to drive and was observed throwing items out of his window before he eventually pulled over. Id. at 3-4. When the officers asked Defendant what he threw out of the window, Defendant stated that it was an ashtray. Id. at 4. A search of the area near the stop discovered an ashtray and three plastic baggies containing marijuana. Id. Officers subsequently discovered that Defendant was driving on a suspended license. Id.

16

On August 25, 2010, officers from the Washtenaw County Sherriff's Department observed Defendant driving a 2000 GMC SUV while playing music at a volume that violated a local ordinance.  Case Report, Ex. D to Def. Mot. to Exclude Evid., at 4 (Dkt. 63-5).   The officers began following Defendant's vehicle and observed Defendant throw a bag out of the front passenger's window.  Id.  One of the officers looked out of his window and observed that the bag contained a green substance that he believed was marijuana.  Id.  The officers subsequently activated their emergency lights and pulled over Defendant.  Id.  Defendant informed the officers that his driver's license was suspended.  Id.  The officers subsequently placed Defendant under arrest and went to inspect the area where Defendant threw the bag out of his car.  Id.  One of the officers discovered a large plastic bag containing 11 smaller plastic bags.  Id.  Later testing confirmed that each smaller bag contained marijuana.  Officers also later determined that the vehicle was registered to Hamilton.  Id. at 5.

On May 9, 2012, Defendant was observed by officers from the Washtenaw County Sherriff's Department driving a vehicle with tinted windows in violation of the Michigan Motor Vehicle Code.  Case Report, Ex. E to Def. Mot. to Exclude Evid., at 3 (Dkt. 63-6).  The officers activated their emergency lights as Defendant entered an apartment complex.  Id.  While Defendant did not stop at first, he eventually came to a stop in a parking spot in the complex.  Id.  As the officers approached Defendant's vehicle, Defendant drove over the curb and onto the grass while heading west.  Id.  The officers got back into their vehicle and searched for Defendant.  Id.  The officers then observed Defendant's unoccupied vehicle parked in another spot in the apartment complex.  Id.  Shortly thereafter, the officers heard a woman screaming and observed Defendant exiting an apartment that he had broken into in an attempt to elude the officers.  Id.  After Defendant was arrested by the officers, Hamilton arrived on the scene and

stated that the car Defendant was driving was registered to her.  Id.  Defendant was again driving with a suspended license.  Id.

Federal Rule of Evidence 404(b)(1) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  However, Rule 404(b)(2) states that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  The Sixth Circuit has developed a three step process to determine whether evidence is admissible under Rule 404(b):

> First, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. Second, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. Third, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

United States v. Clay, 667 F.3d 689, 693 (6th Cir. 2012).

Regarding the first factor, "the government cannot introduce evidence of potentially prejudicial similar acts without any substantiation."  United States v. Bell, 516 F.3d 432, 441 (6th Cir. 2008).  However, the Supreme Court has held that the Government need not prove that the acts occurred by a preponderance of the evidence.  Huddleston v. United States, 485 U.S. 681, 689 (1988).  Rather, "[i]n the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor."  Id.

Defendant states that he has "denied some of the allegations surrounding" the prior acts, and argues that only the acts that resulted in convictions should be introduced.  Def. Mot. to Exclude Evid. at 6.  However, this would require that the Government prove the acts beyond a

reasonable doubt.  This argument runs counter to the Supreme Court's ruling in <u>Huddleston</u> that the Government is not even required to prove the acts by a preponderance of the evidence.  <u>Id.</u> The evidence is sufficient "if the jury can reasonably conclude that the act occurred and that the defendant was the actor."  <u>Id.</u>  The prior acts are summarized in detailed police reports by members of the Washtenaw County Sherriff's Department and presumably would be testified to at trial by the arresting officers.  Therefore, there is sufficient evidence such that a jury could reasonably conclude that the prior acts occurred.  <u>See</u> <u>United States v. Trujillo</u>, 376 F.3d 593, 605 (6th Cir. 2004) (holding that testimony by witnesses to prior acts and evidence from scene was sufficient).

Turning to the second factor under the <u>Clay</u> analysis, the Court must determine whether the prior acts are probative of a material issue other than character.  <u>Clay</u>, 667 F.3d at 693.  This requires that the Court conduct a three-part test: "[e]vidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or in issue, and (3) the evidence is probative with regard to the purpose for which it is offered."  <u>Bell</u>, 516 F.3d at 441-442.  Once again, Rule 404(b)(2) states that proper purposes for prior acts evidence includes "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

Here, the Government is seeking to offer the evidence for an admissible purpose —to prove Defendant's identity.  Gov. Resp. at 18.  "Rule 404(b) allows the introduction of other acts evidence to show identity, provided they are of sufficient distinctive similarity with the charges in the indictment to create a pattern or modus operandi."  <u>Clay</u>, 667 F.3d at 699 (citation and

quotation marks omitted).   Furthermore, because Peterson was not able to apprehend the individual in her chase on August 2, 2014, identity is still in issue.

Further, the evidence is probative of Defendant's identity because it demonstrates a very distinctive pattern of behavior by Defendant.   In each instance, Defendant made an attempt to flee from the police.   While fleeing, Defendant disposed of marijuana by throwing it out of his moving vehicle during the incidents on July 14, 2009 and August 25, 2010.   Furthermore, on August 25, 2010 and May 9, 2012, Defendant was driving on a suspended license in a vehicle that was registered to Hamilton.   In the present case, Defendant fled from police on August 2, 2014, and threw marijuana out of his window in the process.   On both March 24, 2014, and August 2, 2014, Defendant was again driving without a proper license and in cars that were not registered to him.   These similar sets of facts confirm that the prior acts are being offered for the proper purpose of proving Defendant's identity.

The Government also contends that the prior acts are relevant in order to prove Defendant's intent. Gov. Resp. at 18.   The Sixth Circuit has explicitly stated that this is a proper purpose when the defendant is charged with possession with intent to distribute under 21 U.S.C. § 841(a)(1).   Bell, 516 F.3d at 442.   Here, Defendant's intent is in issue.   By "plead[ing] not guilty to the offense of possession with intent to distribute, [the defendant] put his general intent and specific intent at issue, thereby giving the government the burden to establish both beyond a reasonable doubt."   United States v. Lattner, 385 F.3d 947, 957 (6th Cir. 2004).

Furthermore, "[t]o determine if evidence of other acts is probative of intent, we look to whether the evidence relates to conduct that is substantially similar and reasonably near in time to the specific intent offense at issue."   Bell, 516 F.3d at 443.   The Sixth Circuit has "drawn a distinction between the probative value of prior acts of personal drug use and prior acts of drug

20

distribution, finding the former not to be probative of intent to possess and distribute." Id. (emphasis in original). "Unless the past and present crime are related by being part of the same scheme of drug distribution or by having the same modus operandi, the fact that a defendant has intended to possess and distribute drugs in the past does not logically compel the conclusion that he presently intends to possess and distribute drugs." Id. at 443-444. The Government concedes that the acts that took place on July 14, 2009 and May 9, 2012 are not probative of Defendant's intent in the present case.

Regarding the incident on August 25, 2010, it is highly likely that Defendant was engaging in drug distribution. The officers observed Defendant throw a large plastic bag out of his window that contained 11 smaller bags of marijuana. While it is unclear if Defendant was engaged in the same scheme of drug distribution in the present case, Defendant has the same modus operandi. Like in the present case, Defendant was driving around with individually packaged marijuana that was for sale. When he was approached by police, he eluded them for enough time to toss the marijuana out of his car window.

In regard to the requirement that the prior act be "reasonably near in time" to the charged offense, Sixth Circuit "precedent suggests that '[t]here is no absolute maximum number of years that may separate a prior act and the offense charged.'" United States v. Freeman, 412 F. App'x 735, 745 (6th Cir. 2010) (quoting United States v. Blankenship, 775 F.2d 735, 739 (6th Cir. 1985)). While Defendant points to the Court's ruling in Freeman that a ten-year gap between the prior and charged acts was too distant, the instant case is distinguishable. The incidents took place only four years apart and were much more similar than the acts involved in Freeman. Defendant's act on August 25, 2010 is probative of his intent.

Because the prior acts evidence is probative of material issues other than character, both of which are in issue, the Court must decide "whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect." Clay, 667 F.3d at 693. Federal Rule of Evidence 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180 (1997).

However, "[u]nfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." United States v. Ray, 549 F. App'x 428, 434 (6th Cir. 2013). "A limiting instruction will minimize to some degree the prejudicial nature of evidence of other criminal acts; it is not, however, a sure-fire panacea for the prejudice resulting from the needless admission of such evidence." United States v. Haywood, 280 F.3d 715, 724 (6th Cir. 2002). "[T]he district court should consider 'the full evidentiary context of the case as the court understands it when the ruling must be made.'" Bell, 516 F.3d at 445 (quoting Old Chief, 519 U.S. at 182).

The other acts evidence is highly probative of Defendant's identity. After the individual fled in a black Lexus from Peterson during the August 2, 2014 incident, Peterson discovered that the Lexus was registered to Hamilton, Defendant's mother. After running a background check on Defendant, Peterson discovered that he had bills in his name at 1073 Levona. While

executing a search warrant at 1073 Levona, officers observed a black Lexus in the driveway. While this is strong circumstantial evidence that Defendant was the individual who fled from Peterson, it is not conclusive. Defendant's prior acts of fleeing from police after being stopped either with marijuana or without a proper license is highly probative of his identity as the individual who fled from Peterson and threw marijuana from his car window.

Regarding Defendant's intent, the Sixth Circuit has held that "the district court should consider the government's alternative sources of proving intent when weighing the probative value of other acts evidence." Bell, 516 F.3d at 445. In her report, Peterson stated that when she drove to the area where Defendant was seen throwing an orange bag of out the window, she discovered a bag with marijuana, sandwich baggies, and a digital scale. While this is strong evidence of Defendant's intent in itself, as noted above, Defendant's act on August 25, 2010 is highly probative of Defendant's intent in light of the substantial similarity between the acts and because they occurred reasonably near in time. As a result, it cannot be said that the probative value of Defendant's prior acts are substantially outweighed by the danger of unfair prejudice.

Defendant also argues that the prior acts evidence has the danger to confuse and mislead the jury in contravention of Rule 403. Def. Mot. to Exclude Evid. at 8. Defendant contends that the jurors will become confused by the various officers testifying regarding the prior acts and will believe that Defendant is on trial for those acts. Id. at 9. However, a limiting instruction will be given to the jury in order to instruct them to only consider the prior acts evidence for the purposes of determining identity and intent. See Fed. R. Evid. 105 ("If the court admits evidence that is admissible against a party or for a purpose--but not against another party or for another purpose--the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly."). It is well settled that "[j]urors are presumed to follow instructions."

23

United States v. Harvey, 653 F.3d 388, 396 (6th Cir. 2011).  The danger of the jury becoming confused or misled does not substantially outweigh the probative value of the prior acts evidence.

## III.  CONCLUSION

For the reasons stated above, the Court denies Defendant's motions to reconsider, for separate trials of counts, to quash for pre-indictment delay, to dismiss for prosecutorial misconduct, to suppress evidence, and to exclude prior acts evidence (Dkts. 55, 57, 59, 60, 62, 63).  Defendant's motion to suppress his statements is denied as moot (Dkt. 61).

SO ORDERED.

Dated: September 15, 2016                     s/Mark A. Goldsmith
      Detroit, Michigan                          MARK A. GOLDSMITH
                                      United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 15, 2016.

                                     s/Karri Sandusky
                                     Case Manager